UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMSTERS LOCAL 150, | No. 2:07-cv-02443-MCE-GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| AMERISOURCEBERGEN CORPORATION and DOES I through IX, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Teamsters Local 150 ("Plaintiff" or "Union") brings the present Motion to Compel Arbitration on grounds that one of its members, Dennis Kipker, an employee of AmerisourceBergen Corporation ("Defendant") was removed from his position with Defendant in violation of a Collective Bargaining Agreement to which both Plaintiff and Defendant were parties.

///
///
///

1

In response to the subsequent grievance and request for arbitration under the terms of the CBA, Defendant argued that a side agreement with Plaintiff exempted Kipker's grievance from arbitration. As set forth below, the Court disagrees and will accordingly grant Plaintiff's Petition.[1]

**BACKGROUND**

Plaintiff Teamsters Local 150 and Defendant AmerisourceBergen Corporation are parties to a Collective Bargaining Agreement ("CBA") for employees of Defendant's Sacramento facility. (Notice of Removal, Ex. A.) Article 10 of the CBA addresses the grievance procedure and arbitration. The CBA directs employees to attempt to settle a grievance first with the Warehouse Superintendent or Division Manager, then with the Management and Union Grievance Board, and finally through an American Arbitration Association arbiter. Id. Article 13.1 addresses seniority, requiring that "the last employee hired shall be the first employee laid off, and in rehiring, the last employee laid off shall be the first employee rehired, until the list of former employees is exhausted." Id.

///
///
///
///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1          On August 31, 2006, and January 29, 2007, Plaintiff Union
2    filed two grievances concerning the use of temporary agency
3    employees at Defendant's Sacramento facility.  The parties
4    reached a compromise, memorialized in a May 4, 2007 side
5    agreement ("Agreement").  Id.  Defendant agreed to post five
6    inventory positions, one shipping position, four OVS positions,
7    three so-called "slot info" positions, two janitor positions, and
8    one tote induction position.  Id.  Defendant further pledged to
9    notify union employees who had been laid off between August 2006
10   and May 4, 2007 of these sixteen open positions.  Id.  Defendant
11   agreed to consider these former employees before "utilizing
12   outside recruiting."  Id.  Paragraph two of the Agreement
13   nonetheless states that the positions enumerated above "will be
14   awarded by aptitude, performance, and overall qualifications and
15   will not [be] subject to seniority," and that "[t]he selection of
16   candidates and awarding of these positions will not be subject to
17   the grievance and arbitration process."  Id.  A footnote at the
18   end of the Agreement makes it clear, however, that already
19   existing slot info positions would remain subject to the
20   provisions of the CBA, stating as follows:

> To clarify, the existing three slot info position[s]
> will remain in the bargaining unit and will be awarded
> on the basis of qualifications and seniority.  In the
> event that qualifications are equal seniority will
> prevail.  Any additional slot info positions that may
> be added in the future will be awarded based on
> qualifications.

25   Id.
26   ///
27   ///
28   ///

3

Dennis Kipker has been an AmerisourceBergen Corporation employee since June 3, 1991.  He was awarded a slot info position in September 2006, well before the May 4, 2007 Agreement was signed.  Mr. Kipker was removed from his slot info position on August 27, 2007, and he filed a grievance with Plaintiff the same day.  (Skjelstad Decl. Ex. F.)  He claimed his seniority rights had been violated.

In a letter dated September 6, 2007, Terry Skjelstad, Plaintiff's business representative, requested that the Management and Union Grievance Board convene under Article 10.2 of the CBA to address Mr. Kipker's grievance. (Howie Decl. Ex. C.)  In a September 7, 2007 letter, Ken Howie, Defendant's Human Resource Manager, declined Plaintiff's requests to convene a meeting of the Union Grievance Board and to arbitrate.  (Howie Decl. Ex. D.)  The letter indicates this decision was based on Defendant's understanding of the Agreement.  Id.

Plaintiff filed a Petition to Compel Arbitration on October 2, 2007 in Sacramento County Superior Court.  Defendant removed the case to the United States District Court for the Eastern District of California on November 9, 2007.  Plaintiff's previously filed Petition was thereafter renoticed before this Court.

**STANDARD**

When a contract contains an arbitration clause, there is a presumption that the matter will be submitted to arbitration. AT&T Techs., Inc. v. Comm's. Workers of Am., 475 U.S. 643, 650 (1986).

4

"An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960). Any doubts should be resolved in favor of arbitration. <u>Id</u>. at 583. In making this determination, a court looks only at whether the parties agreed to arbitrate the claim, not to the merits of the claim itself. <u>AT&T Techs. Inc.</u>, 475 U.S. at 649-50.

## ANALYSIS

Plaintiff and Defendant entered the Agreement "[i]n an effort to reach a compromise . . . concerning the use of [temporary] agency employees." (Notice of Removal Ex. A.) Defendant agreed to post sixteen new positions and advertise them to union employees who had been laid off from August 2006 through May 4, 2007. <u>Id</u>. The open posts included five inventory positions, one shipping position, four OVS positions, three slot info positions, two janitor positions, and one tote induction position. <u>Id</u>. At the time of the Agreement, no union members occupied the inventory, shipping, OVS, janitor, and tote induction positions. (Pl.'s Reply Br. 6:18-19.).

///
///
///
///
///

Dennis Kipker was one of three incumbents who occupied the slot info positions at the time of the Agreement. (Pl.'s Reply Br. 6:22-24.) The footnote to the Agreement, as enumerated above, explains how the Agreement would affect the three existing slot info positions, which union members already occupied, as opposed to the thirteen other posted positions, which union members did not already occupy.

A plain reading of the footnote also indicates that its terms apply to <u>future</u> slot info hires and not to the three union members already occupying those positions at the time of the Agreement. The first sentence of the footnote states that the three existing slot info positions[2] "will remain in the bargaining unit." Although "bargaining unit" is not specifically defined, it unquestionably refers to the CBA. In short, the terms of the CBA would continue to govern those three slot info positions, and anyone hired to fill them in the future. The use of the future tense ("<u>will</u> remain in the bargaining unit and <u>will</u> be awarded on the basis of qualifications and seniority") suggests that the terms of the Agreement apply only to employees replacing Mr. Kipker and the other existing slot info incumbents at some point in the future.

---

[2] Both the Agreement (Notice of Removal Ex. A) and Plaintiff's Reply Brief (Pl.'s Reply Br. 6:22-23) indicate that three slot info positions were in existence as of May 4, 2007. Mr. Kipker's grievance, however, states that four people worked on the slot information crew as of August 22, 2007. (Skjelstad Decl. Ex. F.) It is unclear whether the fourth slot info position was in existence as of May 4, 2007 and inadvertently omitted in the Agreement, or whether the position was added between May 4 and August 22. For the purposes of this analysis, it matters only that Mr. Kipker occupied one of the slot info positions before May 4, 2007.

6

1     Arguably, a closer question is whether the parties, in
2 stating that the three existing slot info positions were to
3 "remain in the bargaining unit," intended those positions to
4 continue to be subject to all terms of the CBA (including the
5 grievance and arbitration process) or just to the terms of the
6 CBA not in conflict with the Agreement (excluding the grievance
7 and arbitration process).  The use of a conjunction ("will remain
8 in the bargaining unit <u>and</u> will be awarded on the basis of
9 qualifications and seniority"), however, answers this question in
10 favor of the first interpretation.  Any future employees to be
11 placed in the existing slot info positions will be subject to the
12 provisions of the CBA, including the award of such positions
13 based on "qualifications and seniority."  With regard to the
14 existing three slot info positions, if the reference that such
15 positions "will remain in the bargaining unit" is to have any
16 meaning in relation to the fact that the positions "will be
17 awarded on the basis of qualifications and seniority," the first
18 phrase must indicate that the three existing slot info positions
19 are subject to grievance and arbitration.
20     Even if the footnote's language is ambiguous as to the terms
21 of employment for future union members occupying the three
22 existing slot info positions, which the Court does not believe to
23 be the case, nothing in the Agreement suggests it altered the
24 incumbents' terms of employment.  As noted, the use of the future
25 tense implies that the footnote applies only to future occupants
26 of the three slot info positions.
27 ///
28 ///

7

1  Mr. Kipker was awarded a slot info position in September 2006 –
2  eight months before the parties executed the Agreement - and is
3  therefore not a future occupant of the position.
4      The use of the term "candidate" in paragraph two further
5  suggests that Mr. Kipker is not subject to the terms of the
6  Agreement.  Paragraph two states that "[t]he selection of
7  candidates and awarding of these positions will not be subject to
8  the grievance and arbitration process."  "Candidate" suggests
9  either a new employee or a current employee in another position
10 considered for one of the sixteen named positions.  Mr. Kipker
11 was neither; he was already an employee on the slot information
12 crew at the time of the Agreement.
13     Moreover, the Agreement does not prevent an employee <u>removed</u>
14 from one of the three existing slot info positions from partaking
15 in the grievance and arbitration process.  The Agreement requires
16 only that the "selection of candidates," "awarding of positions,"
17 and "hiring procedure set forth in paragraph three" not be
18 subject to grievances and arbitration.  Mr. Kipker's complaint
19 focuses not on his appointment to the slot info position, but on
20 his removal.  "I was notified today . . . that I would lose my
21 bid position on the slot information crew."  (Skjelstad Decl.
22 Ex. F.)  The terms of the Agreement are therefore not even
23 applicable to his particular circumstances.
24 ///
25 ///
26 ///
27 ///
28 ///

1    Defendant contends that "accepting the Union's obtuse
2 interpretation of paragraph two and the asterisk would force the
3 court to render completely meaningless the parties' agreed-upon
4 language that '[t]he selection of candidates and awarding of
5 these positions will not be subject to the grievance and
6 arbitration process.'" (Def.'s Mem. P. & A. in Opp'n to Pet.
7 5:20-23.)  Finding that the incumbents occupying slot info
8 positions may still partake in the grievance and arbitration
9 process does not render the quote from paragraph two meaningless.
10 As discussed, the use of a conjunction in "will remain in the
11 bargaining unit <u>and</u> will be awarded on the basis of
12 qualifications and seniority" indicates not only that future
13 employees occupying the existing slot info positions would be
14 awarded the positions based on "qualifications and seniority,"
15 but also that some additional CBA provisions, distinguishable
16 from those under paragraph two, must apply.  Contrary to
17 Defendant's assertion, finding that the grievance and arbitration
18 process is still available to the slot info incumbents renders
19 both paragraph two and the footnote meaningful.

20    Finally, any remaining doubts as to the meaning of paragraph
21 two and the footnote should be resolved in favor of arbitration.
22 "An order to arbitrate . . . should not be denied unless it may
23 be said with positive assurance that the arbitration clause is
24 not susceptible of an interpretation that covers the asserted
25 dispute."  <u>United Steelworkers of Am. v. Warrior & Gulf</u>
26 <u>Navigation Co.</u>, 363 U.S. 574, 582-83 (1960).
27 ///
28 ///

That it can by no means be said with "positive assurance" that paragraph two and the footnote expressly prohibit Mr. Kipker and the other slot info position incumbents from participating in the grievance and arbitration process is yet another reason why the instant dispute is properly subject to arbitration.

**CONCLUSION**

Dennis Kipker was awarded his slot info position eight months before the parties entered the Agreement, and neither the second paragraph of the Agreement nor the footnote suggest that employees occupying the slot info positions at the time of the Agreement are precluded from partaking in the grievance and arbitration process.  Moreover, it cannot be said with positive assurance that paragraph two and the footnote are "not susceptible of an interpretation that covers the asserted dispute."  Id.  Thus, the presumption that the matter should be submitted to arbitration applies.  For these reasons, Plaintiff's Petition to Compel Arbitration is granted.

IT IS SO ORDERED.

Dated: May 1, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

10